IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00807-PAB

HERBERT J. WATSON,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

This matter is before the Court on plaintiff Herbert Watson's complaint [Docket No. 1], filed on March 29, 2012. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On September 19, 2008, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 18. Plaintiff alleged that he had been disabled since September 11, 2008. *Id*. After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on December 16, 2010.

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

*Id*.  On January 7, 2011, the ALJ issued a decision denying plaintiff's claim.  *Id*. at 26.

The ALJ found that plaintiff had the severe impairment of lower back pain.  R. at 20.  The ALJ found that this impairment did not meet one of the regulations' listed impairments, R. at 20-21, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.927(a) where the claimant is: not required to stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; not required to climb scaffolds, ladders, and ropes; not required to sit for more than 60 minutes at one time without the opportunity to stand; not required to push or pull with the feet; and not required to work at unguarded heights or near unguarded hazardous mechanical equipment.

R. at 21.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is not disabled as "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  R. at 25.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1.  Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the

ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070*.*  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Assessment of Plaintiff's Credibility

Plaintiff argues that, in assessing plaintiff's credibility, the ALJ unreasonably inserted his own medical opinions into the analysis instead of seeking clarification from plaintiff's medical providers regarding the meaning of entries in the record.  Docket No. 14 at 8, 10-11.

Plaintiff focuses his challenge on four specific conclusions, explicitly or implicitly drawn by the ALJ, namely, that the following facts indicated plaintiff's pain was less severe than he claimed: (1) plaintiff's medical provider noted on several occasions that he was "in no acute distress;" (2) plaintiff was prescribed ibuprofen, heat, and stretching exercises; (3) plaintiff is able to perform a range of daily activities; and (4) plaintiff was inconsistent in describing his condition to his medical providers.  Docket No. 14 at 11-18.  Defendant contends that the ALJ's inferences were reasonable and that he "articulated multiple valid reasons for discounting Plaintiff's credibility," such as "Plaintiff's daily activities, his lack of aggressive medical treatment, and inconsistencies between the Plaintiff's testimony and written documents in the record."  Docket No. 17 at 11, 13.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d

1195, 1200 (10th Cir. 2004)). Accordingly, the Court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Id*.

However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted). "[A]n ALJ cannot play the role of doctor and interpret medical evidence." *Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009) (internal citations omitted). "When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

### 1. Acute Distress

Plaintiff argues that the ALJ misinterpreted the notes in plaintiff's medical record stating that he was "in no acute distress." Docket No. 14 at 12.

Physician assistant Deb McCullough noted on September 17, 2008 that plaintiff appeared "well developed, well nourished, [and] in no acute distress" at his physical exam. R. at 237. In the same report, she stated that he suffered from chronic back pain. *Id*. Ms. McCullough made the same notation in October 2008, R. at 307, and in February 2009. R. at 320. The ALJ considered these findings in his opinion, stating that "treatment records indicate that in September 2008, the claimant sought treatment for back pain that he reported to be at a level of '10' on a scale of '1-10.' Upon

examination, however, the claimant was noted to be in no acute distress." R. at 23. He further stated that "[i]n February 2009, . . . [t]he claimant reported that he was experiencing 'shooting pains' down the back of his legs at a level of '8' on a scale of '1-10.' Upon examination, however, it was noted that the claim was in no acute distress." R. at 23.

> The medical definition of the term "acute" is:
>
> 1. Referring to a health effect, usually of rapid onset, brief, not prolonged; sometimes loosely used to mean severe.
>
> 2. Referring to exposure, brief, intense, short-term; sometimes specifically referring to brief exposure of high intensity.

Stedman's Medical Dictionary (27th ed. 2000). In contrast, "chronic" means:

> 1. Referring to a health-related state, lasting a long time.
>
> 2. Referring to exposure, prolonged or long-term, sometimes meaning also low intensity.
>
> 3. The U.S. National Center for Health Statistics defines a chronic condition as one of 3 months' duration or longer.

*Id*. Plaintiff argues that Ms. McCullough classified his pain as non-acute because it was chronic–that is, prolonged as opposed to rapid and brief–not because it was less severe than he claimed it was. *Id*. However, as the definitions above indicate, "chronic" is sometimes used to refer to pain of lesser severity. *See id*. Moreover, a reasonable inference could be drawn from the context of the term, namely, its placement on a list of "General" findings from plaintiff's physical exam, the entirety of which stated: "well developed, well nourished, in no acute distress." *See, e.g.*, R. at 320. The lack of further commentary regarding pain, or any qualification of the general statement, could permit an inference regarding the severity of the pain.
7

Where, as here, it is possible to draw "two inconsistent conclusions from the evidence," the Court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084.

### 2. Treatment

Plaintiff argues that the ALJ erred in discounting plaintiff's credibility on the basis that he was only taking over-the-counter pain medication and that his treating provider prescribed heat and stretching exercises as opposed to more intensive therapies. Docket No. 14 at 12-13, 16; R. at 23.

A claimant's testimony regarding pain "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 374186, at *7. However, an ALJ must consider a claimant's explanation for failing to seek medical treatment, taking into account, for example, the fact that a claimant "may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.* at *8. In general, "[p]ersistent attempts . . . to obtain relief of pain . . ., such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms" are causing pain. *Id.* at *7.

Plaintiff's medical history indicates that, in September 2008, he was examined by Ms. McCullough, who prescribed Flexeril[2] and ibuprofen for his back pain. R. at 238. In

---

[2] Flexeril is a brand name for the drug cyclobenzaprine, a muscle relaxant. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682514.html.

8

addition, she referred him to an orthopedist and instructed him to apply heat to his back and perform stretching exercises. *Id*. However, when plaintiff attempted to see the orthopedist at the indigent care clinic, he was denied. R. at 303. In October 2008, Ms. McCullough examined plaintiff and prescribed him ibuprofen and tramadol.[3] R. at 304. She also discussed "the importance of regular exercise and recommended starting or continuing a regular exercise program for good health" and gave plaintiff a handout on back exercises. R. at 305. In November 2008, Ms. McCullough examined plaintiff and did not alter his plan of care or medications. R. at 302. In February 2009, Ms. McCullough examined plaintiff and changed his prescription from tramadol and ibuprofen to Vicodin, Soma,[4] and ibuprofen. R. at 320. In December 2009, Dr. Alberto Denegri conducted a general checkup and prescribed plaintiff ibuprofen. R. at 330.

At the hearing, plaintiff testified about his current medications:

Q. What medications do you take?
A. I'm supposed to be taking Tagamet for the heartburn, Simadine [PHONETIC] for high blood pressure, Lipitor for cholesterol and 800 Ibuprofens for inflammation and swelling. It helps with the pain.
Q. The Ibuprofen, that's a prescription though, isn't it?
A. Yes.
Q. Not over-the-counter. Now, you're supposed to be you said. Which medications are you able to take?
A. Right now the only thing I take is over-the-counter Ibuprofens. That's all I can afford.

R. at 39-40. In assessing plaintiff's credibility, the ALJ stated that:

[I]n September 2008, the claimant sought treatment for back pain that he

---

[3] Tramadol is prescribed "to relieve moderate to moderately severe pain." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html.

[4] Soma is a muscle relaxant. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682578.html.

> reported to be at a level of "10" on a scale of "1-10." Upon examination, however, the claimant was noted to be in no acute distress and was instructed to apply heat to his back, as well as engage in stretching exercises. In addition, only a muscle relaxant and ibuprofen were prescribed at this time to treat his pain symptoms.

R. at 23. The ALJ further stated that:

> In an October 2008 follow-up examination, the claimant reported that he experienced back pain at a level of "7" on a scale of "1-10." His treatment provider, however, provided him with a handout for back exercise and noted that she had "discussed the importance of regular exercise" and "recommended starting or continuing a regular exercise program for good health." (Ex. 9F) The undersigned finds this to be indicative that the severity of the pain associated with the claimant's condition to not be as significant as he alleged.

R. at 23.

Defendant contends that plaintiff had access to free or low-cost healthcare and thus that the ALJ properly took into account plaintiff's "failure to seek more aggressive treatment." Docket No. 17 at 11-12. However, the record shows that plaintiff was not able to see the orthopedist at the indigent care clinic, in spite of the referral he received from Ms. McCullough, R. at 303, and plaintiff testified that he could not afford any medication other than ibuprofen.[5] R. at 39-40. Moreover, the ALJ did not discuss the fact that plaintiff had been prescribed pain medication other than ibuprofen or referred to an orthopedist. *See generally*, R. at 22-24. It appears that the ALJ neither considered plaintiff's reason for not "seek[ing] more aggressive treatment" nor took into account all of the evidence regarding plaintiff's prescribed treatment before discounting his credibility. *See* 1996 WL 374186, at *8. This was error. *See id.*

---

[5] Although plaintiff did not specifically state that he was unable to afford prescription painkillers, this testimony nonetheless constitutes circumstantial evidence that he had difficulty purchasing medication for his back pain. *See* R. at 39-40.

### *3. Daily Activities and Driving*

Plaintiff argues that the ALJ erred in assessing his daily activities by considering the evidence selectively. Docket No. 14 at 15-16.

At the hearing, plaintiff testified that he "just sit[s] around the house, watch[ing] T.V." R. at 39. He stated that, other than doctors' appointments, he also drives to the grocery store and the post office, although he does not buy groceries alone because he cannot carry them. R. at 39, 42. He stated that he cannot do any housework, especially vacuuming or mowing the lawn. R. at 39. He stated that he can take short trips in the car, "but if I'm in the car for 30 minutes or there, it really bothers me," in which case he must stop the car and get out so that he can stretch. R. at 43. He stated that he cannot take baths, because he cannot get in and out of the bathtub, and that he cannot cook, because he cannot stand up in front of the stove for very long or lift heavy objects. *Id*. He said that he can use the microwave to prepare food. *Id*.

In November 2008, Dr. Nathan Josephs examined plaintiff and recorded the following account of his regular activities: "He can still drive a car. He can cook simple meals. He can do quick errands, and plans them out carefully. He does little household chores, but does help. He can bathe himself, dress himself, go to the bathroom on his own." R. at 312-13. Also in November 2008, plaintiff submitted a function report stating that he goes shopping for food and gas "once a week" for thirty minutes. R. at 182. The ALJ found that:

> Despite the above statements and testimony by the claimant that he was unable to work due to his impairments, the undersigned notes that at the hearing, the claimant testified that his daily activities included going to the grocery store and the post office to pick up his mail. He also stated that he was able to drive himself to these locations. The claimant further testified

11

>that he . . . had no problems driving distances of 30 minutes or less.  The
>claimant also stated that the only change he had made in caring for his
>personal needs involved taking "quick showers" as opposed to taking baths.

R. at 23.

Plaintiff argues that he does not go grocery shopping or to the post office on a daily basis and thus this cannot be considered a "daily activity."  Docket No. 14 at 15.  However, in assessing a plaintiff's functional capacity, an ALJ may properly consider activities performed on a regular basis, whether daily or weekly.  *See, e.g., Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) ("the ALJ noted that Casey prepared supper for her family, drove locally, visited her parents' house several times weekly, attended a bible study, and worked on the computer.  Casey also testified that she was able to camp with her husband, swim, and paint ceramics."); *Carradine v. Barnhart*, 360 F.3d 751, 772-73 (7th Cir. 2004) ("The record is most eloquent in its clear recitation that Carradine engaged in a variety of activities, both daily and weekly, including: daily walks for exercise of up to two miles a day; attending church and social meetings; gardening; doing housework such as cooking, cleaning, and some laundry; driving her car to run errands a couple times a week; and driving a car long distances").  Thus, it was not error for the ALJ to consider plaintiff's grocery shopping.

Plaintiff argues that the ALJ erred in concluding that plaintiff's ability to drive short distances contradicted his testimony of being in pain.  Docket No. 14 at 15-16.  However, plaintiff does not allege that the ALJ disregarded or misconstrued any evidence on this topic.  Rather, it appears that the ALJ took into account plaintiff's statement that he experiences pain if he drives for more than thirty minutes.  *See* R. at 23.  The ALJ reasonably concluded that being able to drive for thirty minutes was

inconsistent with a report of being in constant pain. *See id*. The Court may not displace this conclusion with its own. *See Lax*, 489 F.3d at 1084.

Plaintiff also argues that the ALJ erred in finding that the only alteration in plaintiff's personal care was a switch from taking baths to taking showers. Docket No. 14 at 16. Plaintiff argues that "there were a myriad of other personal needs that plaintiff said were affected," namely, cooking, housework, yard work, and shopping on his own. *Id*. However, the ALJ's conclusion does not concern these other activities, but only plaintiff's ability to clean and care for himself. Moreover, when asked at the hearing whether he has "had [to] change the way that you dress or bath [sic] yourself as a result of your problems," plaintiff mentioned only that he no longer takes baths. R. at 43.

In sum, there was no error in the ALJ's consideration of plaintiff's daily activities.

### 4. Inconsistencies

Plaintiff argues that the ALJ erred in discounting his credibility based on supposed inconsistencies in plaintiff's statements to his medical providers. Docket No. 14 at 17-18.

At an appointment in early November 2008 with Ms. McCullough, plaintiff reported that he was experiencing pain of variable intensity on a daily basis. R. at 301. He stated that he could walk two blocks, sit for thirty minutes, or stand for twenty minutes "before pain sets in again." *Id*. At an appointment with Dr. Josephs later that month, plaintiff stated he could sit for thirty to sixty minutes before needing to move, stand for fifteen minutes, and walk for about half a block. R. at 312. In discussing the report from plaintiff's earlier appointment, the ALJ stated that plaintiff could "walk for two

blocks, sit for 30 minutes, and stand for 20 minutes before experiencing any pain." R. at 23.  He also characterized plaintiff's statements to Dr. Josephs as "contrary" to his earlier statements to Ms. McCullough.  R. at 23.  The ALJ concluded that "the claimant's reported activities could not be performed if the plaintiff's physical limitations were as significant as he alleged and . . . the discrepancies in the claimant's testimony and the evidence of record diminish the persuasiveness of the claimant's subjective complaints and alleged limitations."  R. at 24.

Plaintiff argues that the ALJ misconstrued plaintiff's statements to his healthcare providers so as to minimize the finding of pain.  Docket No. 14 at 17.  Specifically, he challenges the ALJ's use of the phrase "any pain" in place of "before pain sets in again."  *Id*.  However, the ALJ was not quoting from the medical record and was not obliged to reproduce it verbatim.  Plaintiff does not explain why "any pain" is materially different from "before pain sets in again."  *Id*.  While the latter phrase is perhaps more evocative of how plaintiff experiences pain, both phrases convey the same underlying meaning, which is that plaintiff could perform certain activities for a limited period before they caused him pain.

Plaintiff further argues that the "minor variations" between his statements at the two appointments in November 2008 cannot "serve as a basis for rejecting the entirety" of his testimony.  Docket No. 14 at 18.  He asserts that he has been "remarkably consistent" in his accounts to medical providers, reporting difficulty twisting, bending, crouching, lifting weight over five pounds, and maintaining any position other than lying down for more than a brief period of time.  *Id*.

Based on the ALJ's conclusion, it appears that the main factors he relied on in

reaching his credibility determination were plaintiff's regular activities and inconsistencies between plaintiff's testimony and the medical record. See R. at 24. The decision does not indicate that the internal inconsistencies the ALJ noted in plaintiff's testimony were determinative. Moreover, while the Court may not find the cited discrepancies particularly troubling, the ALJ's inference was permissible and cannot be displaced by the Court's own interpretation of the record. See Raymond v. Astrue, 621 F.3d 1269, 1272-73 (10th Cir. 2009).

## III.  CONCLUSION

The Court must remand this case so that the ALJ can consider the evidence regarding plaintiff's prescribed treatment and the reasons he may not have obtained such treatment, see SSR-96-7p, 1996 WL 374186, at *8 (July 2, 1996), along with the rest of the record. The Court need not consider plaintiff's additional argument that the Appeals Council should have overturned the decision based on Dr. Denegri's report. See Docket No. 14 at 19-20.

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED March 29, 2013.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge